ALAN KORN, SBN 167933
LAW OFFICE OF ALAN KORN
1840 Woolsey Street
Berkeley, California 94703
Ph. (510) 548-7300
Fax: (510) 540-4821

Attorney for Plaintiffs
Penelope Houston, James Wilsey,
Daniel O'Brien and Greg Ingraham

ORIGINAL
FILED
APR 30 2010
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

E-filing

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

ADR

PENELOPE HOUSTON, an individual, GREG INGRAHAM, an individual, JAMES WILSEY, an individual, and DANIEL O'BRIEN, an individual,

Plaintiffs,

v.

DAVID FERGUSON, an individual dba CD PRESENTS, BURIED TREASURE MUSIC and ANARCHY ANTHEMS; ANTHEM MUSIC AND MEDIA FUND, LLC, a Delaware Limited Liability Company dba FIGS D. MUSIC, THE BICYCLE MUSIC COMPANY, an entity of unknown origin; NBC UNIVERSAL, INC., a Delaware Corporation; and Film 44, INC., a California Corporation,

Defendants.

**CASE No.** C10-01881 PVT

**COMPLAINT FOR COPYRIGHT INFRINGEMENT, DECLARATORY JUDGMENT, BREACH OF CONTRACT, BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING, FRAUD, FRAUDULENT INDUCMENT OF CONTRACT, CONVERSION, ACCOUNTING, CONSTRUCTIVE TRUST and INJUNCTIVE RELIF**

**(17 U.S.C. §101 et seq.)**

**DEMAND FOR JURY TRIAL**

Plaintiffs Penelope Houston. James Wilsey, Daniel O'Brien and Greg Ingraham. ("Plaintiffs") by their Attorney, for their Complaint against Defendants listed above, allege as follows:

## I. NATURE OF THE ACTION

1. This action for copyright infringement and declaratory relief is brought by Plaintiffs pursuant to the Copyright Act (17 U.S.C. Sections 101, et seq.) and this action for breach of contract, breach of fiduciary duty, fraud, fraudulent inducement of contract. conversion and related claims is brought pursuant to other common and statutory law set forth.

## II. PARTIES TO THE ACTION

2. Plaintiff Penelope Houston ("Houston") is an individual residing within the State of California. Plaintiff Houston is an original member and vocalist of the late-1970s San Francisco punk rock band The Avengers, and co-author and joint copyright owner of numerous Avengers sound recordings and musical compositions, including *The American In Me* (aka *The Amerikan in Me*). *Corpus Christi. Uh Oh. White Nigger*, *Open Your Eyes*, *No Martyr, Desperation. Thin White Line. F**k You. Second to None, Cheap Tragedies* and others (the "Masters" and "Compositions") which Plaintiffs allege were used without permission by the Defendants herein. Ms. Houston is, and at all relevant times was, a domiciliary of the United States.

3. Plaintiff Greg Ingraham ("Ingraham") is an individual residing within the State of California. Plaintiff Ingraham is also an original member and guitarist of the late-1970s San Francisco punk rock band The Avengers. and co-author and joint copyright owner of the Masters and Compositions (excluding *Corpus Christi*) which Plaintiffs allege were used without permission by the Defendants herein. Mr. Ingraham is, and at all relevant times was, a domiciliary of the United States.

4. Plaintiff James Wilsey ("Wilsey") is an individual residing within the State of California. Plaintiff Wilsey is also an original member and bass guitarist of the late-1970s San

Francisco punk rock band The Avengers, and co-author and joint copyright owner of the Masters and Compositions which Plaintiffs allege were used without permission by Defendants herein. Mr. Wilsey is, and at all relevant times was, a domiciliary of the United States .

5. Plaintiff Daniel O'Brien ("O'Brien") is an individual residing within the country of Sweden. Plaintiff O'Brien is also an original member and drummer of the late-1970s San Francisco punk rock band The Avengers, and co-author and joint copyright owner of the Masters and Compositions which Plaintiffs allege were used without permission by Defendants herein. Mr. O'Brien, though currently a domiciliary of Sweden, is a national of the United States who has previously conducted substantial business in the San Francisco Bay Area as a musician, performer, composer and recording artist under the professional pseudonym "Danny Furious."

6. Plaintiffs are informed and believe that Defendant David Ferguson ("Ferguson") is an individual who at various times has conducted business under the fictitious business names Go! Records, CD Presents, Ltd., Buried Treasure Music and Anarchy Anthems. On information and belief, Defendant Ferguson is, and at all times herein mentioned was, doing business within the State of California as a record company and music publishing company engaged in the business of reproducing and distributing, and licensing the reproduction and distribution of, recordings and compositions (including the Masters and Compositions herein) and collecting income arising thereby.

7. Plaintiffs are informed and believe that Defendant Anthem Music and Media Fund, LLC ("Anthem Music") is a limited liability company existing under the laws of the State of Delaware which at various times has conducting business under the fictitious business name Figs D. Music and is engaged in the business of administering and licensing of rights in and to master recordings and musical compositions (including the Masters and Compositions herein) and collecting income arising thereby.

8. Plaintiffs are informed and believe that Defendant Bicycle Music Company ("Bicycle Music") is an entity of unknown origin existing under the laws of the State of

California that is engaged in the business of administering and licensing of rights in and to master recordings and musical compositions (including the Masters and Compositions herein) and collecting income arising thereby.

9. Plaintiffs are informed and believe that Defendant Film 44 ("Film 44") is a corporation existing under the laws of the State of California engaged in the business of film and video production, including production of the October 5, 2009 episode of the NBC television program "Trauma" entitled *All's Fair* that makes unauthorized use of Plaintiffs' Master and Composition entitled *The American In Me*.

10. Plaintiffs are informed and believe that Defendant NBC Universal. Inc. ("NBC") is a corporation existing under the laws of the State of New York that is engaged in the business of broadcasting network television programs, including the broadcast and re-broadcast of the October 5, 2009 episode of the NBC television program "Trauma" entitled *All's Fair* that makes unauthorized use of Plaintiffs' Master and Composition entitled *The American In Me*.

## III. JURISDICTION AND VENUE

11. This Court has jurisdiction of the subject matter for this claim under the provisions of 28 U.S.C. §1338(a), because this action arises under an Act of Congress relating to Copyrights, the Copyright Act of 1976, Pub. L. 94-553, 90 Stat. 2541 *et seq.* 17 U.S.C. 101 *et seq.*

12. This Court has jurisdiction of the subject matter of this claim under the provisions of 28 U.S.C. §1331, because the action arises under the laws of the United States, specifically the above-cited Copyright Act of 1976.

13. Venue is properly laid in the District Court for the Northern District of California pursuant to 28 U.S.C. § 1391(b), and § 1391(c), since, *inter alia*, the causes of action asserted arose from or are connected with purposeful acts committed by the individual Defendants in this District, and the corporate and individual Defendants named herein are each doing business in this District.

## IV. FACTUAL ALLEGATIONS

*A. The Avengers Studio Recordings and Compositions*

14. Plaintiffs Houston, Ingraham, Wilsey and O'Brien are original members of The Avengers whose brief career from 1977 to June 1979 encompassed the birth of west coast punk and included a legendary January 1978 performance opening for the Sex Pistols at Winterland Auditorium.

15. Despite their brief existence, The Avengers influenced a generation of rock musicians, including such legendary artists as Nirvana, Pearl Jam and Green Day, and left behind a legacy of approximately twenty-one (21) studio recordings and twenty-seven (27) musical compositions that are regarded as some of the best punk rock anthems to emerge from the late 1970s West Coast punk scene.

16. On or about November 27, 1977, Plaintiffs entered into a recording agreement with Dangerhouse Records (the "Dangerhouse Agreement") and subsequently recorded and released their first single, a three-song vinyl 7" EP comprised of the original Compositions *We Are The One*, *Car Crash* and *I Believe In Me* (the "Dangerhouse EP"). All rights in and to the above sound recordings (including copyright) are retained by Dangerhouse Records pursuant to the Dangerhouse Agreement.

17. The Compositions *We Are The One*, *Car Crash* and *I Believe In Me* constitute copyrightable subject matter under the laws of the United States, and Plaintiffs' registration of said Compositions is pending with the United States Copyright Office pursuant to Registration Application No. 1-42514945 (*Car Crash*), 1-42514902 (*I Believe in Me*) and 1-42328321 (*We Are The One*) which were submitted to the Register of Copyrights on or about December 13, 2008.

///

18. In late 1978 and early 1979 Plaintiffs recorded the Masters *The American In Me*. *Uh Oh*, *White Nigger* and *Corpus Christi*[1] (produced by Sex Pistols' guitarist Steve Jones and engineered by recording artist Geza X) which were later released pursuant to a written agreement with White Noise Records dated July 30, 1979 (the "White Noise Agreement"). Copyrights in the above Masters were originally owned by White Noise Records pursuant to the White Noise Agreement. Said Masters constitute copyrightable subject matter under the laws of the United States, and were registered with the United States Copyright Office pursuant to Registration Certificate No. SR 14-773, issued by the Register of Copyrights on January 14, 1980. a true and correct copy of which is attached as **Exhibit A.** On or about November 30, 2008, White Noise Records assigned all rights in the Masters to Plaintiffs Houston, Ingraham, Wilsey and O'Brien pursuant to an Assignment of Copyright, a true and correct copy of which is attached hereto as **Exhibit B** and incorporated herein by reference.

19. The Compositions *The American In Me*, *Corpus Christi*, *Uh Oh* and *White Nigger* (the "Compositions") constitute copyrightable subject matter under the laws of the United States, and were registered by Plaintiffs with the Copyright Office on December 10, 1979 pursuant to United States Copyright Registration certificate No. PA 58-030 (*White Nigger*), No. PA 58-031 (*The American In Me*), No. PA 58-032 (*Corpus Christi*) and No. 58-033 (*Uh Oh (A Mystery)*). True and correct copies of Plaintiffs' copyright registrations for the above Compositions are attached hereto as **Exhibit C** and incorporated herein by this reference.

20. The Masters and Compositions *The American In Me, Corpus Christi*, *Uh Oh* and *White Nigger* were commercially released by White Noise Records in approximately October 1979 on a critically acclaimed 12" vinyl EP titled "The Avengers" (the "White Noise EP").

21. The Avengers disbanded in approximately June 1979 prior to the release of the White Noise EP. Following the breakup, all four Plaintiffs' ceased to perform together as a band

[1] Plaintiff Ingraham quit the band in approximately January 1979 and was replaced by guitarist Brad Kent on the sound recording/composition *Corpus Christi.*

and Plaintiffs had no substantive communication with one another until the late 1990s. Plaintiff Houston immediately pursued a solo career in Los Angeles, California and London, England, and Plaintiff Wilsey immediately joined the Bay Area band Silvertone and went on to achieve substantial acclaim as guitarist for popular recording artist Chris Isaak.

22. In approximately August 1982, three (3) years after The Avengers disbanded, Defendant Ferguson tracked down Plaintiff O'Brien to discuss the release of a compilation album of Avengers material comprised of the Dangerhouse EP, the White Noise EP and additional unreleased Avengers recordings. On August 11, 1982 Plaintiff O'Brien entered into a non-exclusive license permitting the record label Go! Records to release an Avengers compilation album in the form of Phonorecords only (the "First O'Brien License"). The First O'Brien License promised the Avengers would receive a royalty based on six percent (6%) of actual retail price with accounting statements rendered, and royalties paid, semi-annually. Paragraph 7(d) of the First O'Brien License additionally required Artist's consent prior to any modifications, alterations or changes to the Masters, including the addition of sound effects.

23. On or about August 11, 1982 Plaintiffs Wilsey and O'Brien entered into a separate non-exclusive license agreement with Go! Records permitting the limited use of one (1) unnamed song in a vinyl compilation album consisting of various Bay Area punk bands entitled *Rat Music for Rat People* (hereafter the "*Rat Music* License" and the "*Rat Music* Compilation").

24. In or about Fall 1982, Defendant Ferguson issued the *Rat Music* Compilation featuring the recording *Cheap Tragedies* by The Avengers.

25. The Master *Cheap Tragedies* constitutes copyrightable subject matter under the laws of the United States, and registration of said Master by Plaintiffs is pending with the United States Copyright Office pursuant to Registration Application No. SR 1-372874068 submitted to the Register of Copyrights on or about April 10, 2010.

26. The Composition *Cheap Tragedies* constitutes copyrightable subject matter under the laws of the United States, and registration of said Composition by Plaintiffs is pending with the United States Copyright Office pursuant to Registration Application No. PA 1-372696972 submitted to the Register of Copyrights on or about April 10, 2010.

27. On or about January 16. 1983, Plaintiff Wilsey signed a non-exclusive license agreement with Go! Records permitting the release of eleven (11) Masters on an Avengers compilation album in the form of Phonorecords only (the "First Wilsey License"). The First Wilsey License provided that the Avengers would receive a royalty based on six percent (6%) of actual retail price. with accounting statements rendered, and royalties paid, semi-annually. Paragraph 7(d) of the First Wilsey License additionally required Artist's consent prior to any modifications, alterations or changes to the Masters. including the addition of sound effects.

28. On or about January 21. 1983, Go! Records also entered into a separate Producer Agreement with Plaintiff Wilsey concerning his production services on an Avengers compilation album (the "Producer Agreement"). In exchange for his producer services, the Producer Agreement promised Wilsey an additional royalty of one percent (1%) of actual retail price on albums sold with accounting statements rendered, and royalties paid, semi-annually.

29. In approximately Spring 1983, Go! Records issued a fourteen (14) track vinyl compilation album entitled *The Avengers* (referred to herein by its unofficial title the "*Pink Album*") consisting of the three Dangerhouse EP Masters, the four White Noise EP Masters and the seven (7) additional previously unreleased recordings: *Open Your Eyes, No Martyr, Desperation, Thin White Line, Second to None, F**k You* and a cover version of the Rolling Stones song *Paint It Black* (collectively the "*Pink Album* Masters").

30. The Masters *Open Your Eyes*, *No Martyr, Desperation, Thin White Line, F**k You* and *Paint It Black* are owned by Plaintiffs and constitute copyrightable subject matter under the laws of the United States. Registration of said Masters is pending with the United States

Copyright Office pursuant to Registration Application No. SR 1-142515009 submitted to the Register of Copyrights by Plaintiffs on or about December 19, 2008.

31. On information and belief, Plaintiffs allege that David Ferguson and/or his company CD Presents, Ltd. acquired Go! Records pursuant to a court order issued on or about June 21, 1983 in the Superior Court of California for the City and County of San Francisco.

32. On June 26, 1983, following commercial release of the *Pink Album* and the acquisition of Go! Records, Ferguson's company CD Presents, Ltd. entered into new non-exclusive license agreements with Plaintiff Wilsey and Plaintiff O'Brien permitting the release of fourteen (14) Masters comprising the *Pink Album* in the form of Phonorecords only (the "Second Wilsey License" and "Second O'Brien License"). The Second Wilsey License and Second O'Brien License again provided that The Avengers would receive a royalty based on six percent (6%) of actual retail price, with accounting statements and royalties to be provided semi-annually. Paragraph 7(d) of both licenses again required Artist's consent prior to any modifications, alterations or changes to the Masters, including the addition of sound effects.

33. On or about August 24, 1983 following release of the *Pink Album*, Ferguson's company CD Presents, Ltd. located Plaintiff Ingraham and obtained Ingraham's signature on a separate non-exclusive license agreement concerning the *Pink Album* Masters (the "Ingraham License"). Under the Ingraham License, the fourteen (14) *Pink Album* Masters were to be released in the form of Phonorecords only and Plaintiffs were to receive a royalty based on six percent (6%) of actual retail price, with accounting statements and royalties to be provided on a semi-annual basis. Paragraph 7(d) of the Ingraham License further required Artist's consent prior to any modifications, alterations or changes to the Masters, including the addition of sound effects.

34. On October 19, 1983 and January 24, 1984 Plaintiff Houston, who was no longer in contact with other Plaintiffs, wrote Defendant Ferguson from London, England demanding

that he produce copies of contracts or other documents authorizing his release of the *Pink Album* and *Rat Music* Compilation.

35. On or about March 21. 1984, Plaintiff Ingraham entered into a separate co-publishing agreement with Ferguson's company CD Presents. Ltd. (the "Ingraham Co-Publishing Agreement") whereby Ingraham and CD Presents, Ltd. agreed to jointly own an undivided fifty percent (50%) copyright interest in Plaintiff Ingraham's 25% interest in fourteen (14) Avengers compositions: *We Are The One*. *Car Crash*, *I Believe In Me*. *The American In Me*, *Corpus Christi*. *Uh Oh*, *White Nigger*. *Open Your Eyes*, *Desperation*, *Thin White Line*, *No Martyr*, *F**k You*. *Cheap Tragedies* and *Second to None* In consideration for the above grant of rights, Ferguson's company agreed to administer Ingraham's interest in the Compositions and pay Ingraham fifty percent (50%) of gross receipts on a semi-annual basis.

36. After receiving no response to her 1983 and 1984 registered letters to Ferguson, Plaintiff Houston later tracked down Ferguson upon her return to San Francisco to express her concerns about his release of the *Pink Album* and *Rat Music* Compilation.

37. On or about January 7, 1985, after learning that Plaintiffs Ingraham, Wilsey and O'Brien had signed License Agreements with CD Presents, Ltd. authorizing distribution of the *Pink Album*, Plaintiff Houston signed a separate non-exclusive license with CD Presents, Ltd. concerning the *Pink Album* Masters (the "Houston License"). The Houston License similarly provided that the fourteen (14) *Pink Album* Masters would be released in the form of Phonorecords only, and that Plaintiffs would receive a royalty based on six percent (6%) of actual retail price, with accounting statements and royalties to be delivered semi-annually. Paragraph 7(d) of the Houston License additionally required Artist's consent prior to any modifications, alterations or changes to the Masters, including the addition of sound effects.

38. On or about March 5, 1985, Plaintiff Houston also entered into a separate music co-publishing agreement with Ferguson's company CD Presents, Ltd. (the "Houston Co-Publishing Agreement") whereby Houston and CD Presents, Ltd. agreed to jointly own an

undivided fifty percent (50%) copyright interest in Plaintiff Houston's 25% interest in fourteen (14) Avengers Compositions: *We Are The One*, *Car Crash*, *I Believe In Me*, *The American In Me*, *Corpus Christi*, *Uh Oh*, *White Nigger*, *Open Your Eyes*, *Desperation*, *Thin White Line*, *No Martyr*, *F**k You*, *Cheap Tragedies* and *Second to None*. In consideration for the above grant of rights, Ferguson's company agreed to administer Houston's interest in the Compositions and pay Houston fifty percent (50%) of gross receipts on a semi-annual basis.

39. At no time have Plaintiffs Wilsey or O'Brien entered into any agreements with Defendant Ferguson, CD Presents, Ltd. or their successors or assigns concerning their respective rights in the Compositions, nor did Plaintiffs Wilsey or O'Brien authorize Plaintiffs Houston or Ingraham to enter into any Publishing Agreements on their behalf. As any transfer of copyright interest, other than one by operation of law, is not valid unless set forth in an instrument of conveyance signed by the owner of the rights conveyed or their duly authorized agent pursuant to 17 U.S.C. Section 204(a), Plaintiffs Wilsey and O'Brien have at all times retained their respective ownership and copyright interests in the fourteen (14) Compositions identified in Paragraphs 35 and 38 herein.

40. From approximately 1982 through the 1990s, Ferguson and his company CD Presents, Ltd. were engaged in the manufacture and sale of the *Pink Album* Masters on vinyl, cassette and compact disc. Despite Ferguson's subsequent claims that the *Pink Album* sold more than 100,000 copies, Plaintiffs received only a few hundred dollars in advances upon signing their Licensing Agreements. After March 1985 Ferguson ceased providing Plaintiffs with copies of accounting statements and royalties, despite his ongoing contractual obligation to do so.

41. On or about March 23, 1993 prior to commencing litigation against Frontier Records, Plaintiff Houston and others concerning an alleged violation of "exclusive" rights in the Masters *We Are The One* and *Car Crash*.[2] CD Presents, Ltd. assigned its rights and obligations

---

[2] *See* Buried Treasure, Inc. v. Frontier Records, 1994 U.S. Dist. LEXIS 10432 (N.D. Cal. 1994) (finding summary judgment in favor of Frontier Records and against Buried Treasure, Inc.).

pursuant to the License Agreements, the Producer Agreement, the Houston Co-Publishing

Agreement and Ingraham Co-Publishing Agreements to Buried Treasure, Inc., a Nevada

corporation allegedly owned by Ferguson's mother. A true and correct copy of the "Assignment

of Copyrights" between CD Presents, Ltd. and Buried Treasure, Inc. is attached hereto as

**Exhibit D**, and incorporated herein by this reference.

42.    On information and belief, Plaintiffs allege that at some point after the above

transfer of rights, Ferguson's corporation CD Presents, Ltd. was suspended by the California

Secretary of State. Attached hereto as **Exhibit E**, and incorporated herein by reference, is a

printout from the California Secretary of State's website identifying the corporate status of CD

Presents, Ltd. as "Suspended."

43.    On information and belief, Plaintiffs allege that Defendant Ferguson was later

appointed President, Secretary and Treasurer of Buried Treasure, Inc., and that at some time

prior to the infringing acts alleged herein, the corporate charter of Buried Treasure, Inc. was

permanently revoked by the Nevada Secretary of State. Attached hereto as **Exhibit F,** and

incorporated herein by reference, is a printout from the Nevada Secretary of State's website

identifying David Ferguson as "Treasurer," "Secretary" and "President" of Buried Treasure, Inc.,

and identifying the corporate status of Buried Treasure, Inc. as "Permanently Revoked."

44.    Plaintiffs allege on information and belief that in or about the mid-1990s after the

loss of its lawsuit against Frontier Records, the corporation Buried Treasure, Inc. somehow

transferred to Defendant Ferguson the rights and obligations it had previously acquired from CD

Presents, Ltd. in the License Agreements, the Producer Agreement, the Houston Co-Publishing

Agreement and the Ingraham Co-Publishing Agreement.

45.    In or about May 1999, Plaintiff Houston registered approximately twelve (12)

Compositions with BMI after discovering that Defendant Ferguson, CD Presents, Inc. and

Buried Treasure, Inc. had failed to register the Compositions with any performance rights

societies despite their obligations under the Houston Co-Publishing Agreement and Ingraham

Co-Publishing Agreement, thereby preventing Houston and Ingraham from earning performing rights income from the Compositions.

46. In approximately August 1999 Plaintiffs retained legal counsel to address Ferguson's ongoing multiple breaches of their respective License Agreements and Co-Publishing Agreements, including his failure to provide any accounting or compensation (including artist royalties and publishing income) for prior sales of the *Pink Album*.

47. On or about August 5, 1999, counsel for Plaintiffs wrote a letter to CD Presents, Ltd., Buried Treasure, Inc. and Defendant Ferguson notifying them of Plaintiffs' termination and cancellation of their "at will" license agreements for the *Pink Album* due to their material breach in failing to provide accounting statements or pay royalties since 1985. An unsigned copy of the termination letter that was ultimately delivered to legal counsel for Ferguson (and bearing the date April 27, 2006, when it was produced to Plaintiffs) is attached hereto as **Exhibit G**, and incorporated herein by reference.

48. Plaintiffs' letter delivered on or about August 5, 1999 also notified Defendant Ferguson, CD Presents, Ltd. and Buried Treasure, Inc. of Houston and Ingraham's rescission and termination of their Co-Publishing Agreements based on numerous factors, including Defendant's negligent or intentional misrepresentation, concealment, fraud, failure register the Compositions with performance rights societies, and failure to pay royalties to Plaintiffs since approximately 1985.

49. Following receipt of Plaintiffs' termination letter, Defendant Ferguson, CD Presents, Ltd. and Buried Treasure, Inc. thereafter discontinued any further sale and licensing of the *Pink Album* Masters and Compositions until approximately 2008 or 2009.

50. In approximately 1999 Plaintiffs thereafter licensed an album entitled *The Avengers Died For Your Sins* to Lookout Records containing alternate and live versions of certain Avengers Compositions, including *The American In Me*, *Open Your Eyes*, *Car Crash*, *F**k You*, *Desperation*, *I Believe In Me*, *We Are The One* and *White Nigger*. Said album was

openly distributed in the United States and internationally, including over Amazon.com and other online music retailers.

51. On information and belief, Plaintiffs allege Defendant Ferguson was aware of Plaintiffs' *The Avengers Died For Your Sins* album but made no attempt to collect mechanical royalties or other publishing income from Lookout Records for said Compositions or otherwise perform his obligations under the terminated Co-Publishing Agreements.

52. In or about 2003 Plaintiffs licensed an album entitled *The Avengers Zero Hour: June 13, 1979* to the Get Back record label which contained live versions of certain Avengers Compositions, including *Cheap Tragedies, Corpus Christi, Uh Oh* and *The American In Me*. Said album was openly distributed in the United States and internationally, including over Amazon.com and other online music retailers.

53. On information and belief, Plaintiffs allege Defendant Ferguson was aware of Plaintiffs' *The Avengers Zero Hour: June 13, 1979* album but made no attempt to collect mechanical royalties or other publishing income from Get Back from said Compositions or otherwise perform his obligations under the terminated Co-Publishing Agreements.

54. In approximately 2003, Dangerhouse Records licensed the Master *We Are The One* for use in the Rhino Records compilation entitled "No Thanks! The '70s Punk Rebellion" without any interference from Defendant Ferguson.

55. On information and belief, Plaintiffs allege Defendant Ferguson was aware of the Rhino Records box set containing Plaintiffs' Composition *We Are The One* but made no attempt to collect mechanical royalties or other publishing income from Rhino Records until approximately 2008.

56. In approximately 2004 Plaintiffs licensed an album entitled *The American In Me* to the DBK Works record label containing alternate and live versions of Avengers Compositions, including *The American In Me, We Are The One, White Nigger, Uh Oh, Cheap Tragedies and*

*Corpus Christi*. Said album was openly distributed in the United States and internationally, including over Amazon.com and other online music retailers.

57. On information and belief, Plaintiffs allege Defendant Ferguson was aware of Plaintiffs' *The American In Me* compilation album but made no attempt to collect mechanical royalties or other publishing income from DBK Works for said Compositions or otherwise perform his obligations under the terminated Co-Publishing Agreements.

58. In approximately 2006 Plaintiffs again asserted their rights in the Masters and Compositions by manufacturing and distributing a limited edition version of the *Pink Album* which was sold across the United States and in Europe, including at live Avengers reunion concerts (featuring Plaintiffs Houston and Ingraham with a new rhythm section), at solo concerts by Plaintiff Houston and over the internet on Plaintiff Houston's website www.penelope.net.

59. On or about February 13, 2008 during Plaintiffs' negotiations with third parties concerning their official reissue of their *Pink Album* Masters, Plaintiffs legal counsel wrote Ferguson reminding him that the License Agreements and Co-Publishing Agreements were terminated in August 1999 based on his failure to pay royalties since 1985, and demanding that Ferguson not interfere with Plaintiffs' pending negotiations concerning the *Pink Album*. A true and correct copy of Plaintiffs' February 13, 2008 letter is attached hereto as **Exhibit H** and incorporated herein by reference.

60. On or about February 29, 2008 counsel for Ferguson responded by alleging that the License Agreements and Co-Publishing Agreements were still in effect, despite Plaintiffs prior termination of said agreements. A true and correct copy of the February 29, 2008 letter from Ferguson's counsel is attached hereto as **Exhibit I**, and incorporated herein by reference.

61. On December 10, 2008, Plaintiffs again notified legal counsel for Defendant Ferguson that he lacked any right to exploit The Avengers Masters (including the White Noise EP Masters) based on Plaintiffs' August 1999 termination of their non-exclusive license

agreements for non-payment of royalties. A true and correct copy of Plaintiffs' December 10, 2008 letter is attached hereto as **Exhibit J**, and incorporated herein by reference.

62. Despite Plaintiffs' repeated demands, in or about 2008 or 2009 Defendant Ferguson entered into agreements with Anthem Music and/or Bicycle Music granting them the right to administer rights in and to the Masters and Compositions, in willful disregard of Plaintiffs' 1999 termination of their respective License Agreements, the Houston Co-Publishing Agreement and the Ingraham Co-Publishing Agreement.

63. Beginning in or about 2008 or 2009, Defendants Ferguson, Anthem Music and Bicycle Music negotiated and entered into separate agreements with various third parties permitting the reproduction, distribution and exploitation of the Masters and Compositions, all in willful and conscious disregard of Plaintiffs' exclusive rights therein. Plaintiffs, on information and belief, allege that Defendants Ferguson, Anthem Music and Bicycle Music have granted the following unauthorized uses:

(a) Reproduction and distribution of the Master and Composition *The American In Me* in an episode of the NBC television program "Trauma" entitled *All's Fair* initially broadcast over the NBC network on or about October 5, 2009 and subsequently rebroadcast and distributed throughout the world, including streaming video on the Internet website www.hulu.com and digital downloads over the iTunes store and related retail websites. A true and correct printout from the iTunes store reflecting distribution of the *All's Fair* episode of the television program "Trauma" containing Plaintiffs' Master and Composition is attached hereto as **Exhibit K**, and incorporated herein by this reference.

(b) Authorizing music distributor Internet Online Distribution Alliance, Inc. ("IODA") in or about 2009 or 2010 to license a substantially "remixed," "remastered" and "expanded" version of the *Pink Album,* embodying five (5) additional Avengers recordings not included in the original License Agreements, to third party digital music retailers including iTunes, Amazon.com, eMusic and other online vendors throughout the world. True and correct

printouts of webpages documenting the unauthorized sale of Plaintiffs' *Pink Album* Masters are attached hereto as **Exhibit L** and incorporated herein by reference;

(c) Authorizing music distributor IODA in or about 2009 or 2010 to release an additional album entitled *Tribute to the Avengers* containing cover versions of Plaintiffs' Compositions to third party digital music retailers, including iTunes, Amazon.com, eMusic and other online vendors throughout the world. True and correct printouts of webpages documenting the unauthorized use of Plaintiffs' Compositions on the *Tribute to the Avengers* album are attached hereto as **Exhibit M** and incorporated herein by reference.

(d) Authorizing music distributor IODA in or about 2009 or 2010 to release a compilation album of west coast punk bands entitled *Rat Music For Rat People, Vol. IV* containing the Composition *I Believe In Me*. True and correct printouts of webpages documenting the unauthorized reproduction and distribution of the Master and Composition *I Believe in Me* as part of the above compilations are attached hereto as **Exhibit N** and incorporated herein by reference;

(e) Granting in or about 2008 the right to use the Composition *We Are The One* in the independent motion picture "What We Do Is Secret" and that film's accompanying soundtrack album. True and correct printouts of webpages documenting the inclusion of the Composition *We Are The One* in the soundtrack to the film "What We Do Is Secret" are attached hereto as **Exhibit O** and incorporated herein by reference;

(f) Collecting in 2008 approximately $3,000 in mechanical royalties from Rhino Records from their sale the box set "No Thanks! The '70s Punk Rebellion" containing the Composition *We Are The One*.

(g) Agreements with Broadcast Music, Inc. ("BMI") authorizing the public performance of Plaintiffs' Compositions and the collection of performance rights income earned thereby.

64.    At no time following the 1999 termination of the respective License Agreements and Co-Publishing Agreements did Plaintiffs authorize any of the above acts by Defendants, nor have Plaintiffs been compensated by Defendants, or any of them, for the above-described uses of their Masters and Compositions or the collection of income derived from such exploitation.

## FIRST CAUSE OF ACTION

### Copyright Infringement – *The American in Me* (Master and Composition)

### (All Defendants)

65.    Plaintiffs repeat and reallege each of the allegations set forth in Paragraphs 1 through 64 inclusive, and by this reference incorporate the same as though fully set forth herein.

66.    On information and belief, Plaintiffs allege that in or about 2009 Defendants Ferguson, Anthem Music and/or Bicycle Music entered into a license agreement with Film 44 and/or NBC Universal permitting use of the Master and Composition *The American In Me* in an episode of the television program "Trauma" entitled *All's Fair* that aired on or about October 5, 2009. Plaintiffs further allege that Defendants Ferguson, Anthem Music and/or Bicycle Music entered into the licensing agreement willfully and with full knowledge that they had no right to do so.

67.    Defendants failure to secure Plaintiffs' permission regarding the use of *The American in Me* Master in an episode of the television program "Trauma" violates Plaintiffs' rights inasmuch as Ferguson never acquired copyright in said Master, and inasmuch as White Noise Records assigned all rights, including copyright, in the Master to Plaintiffs on or about November 30, 2008, and Plaintiffs therefore retain the exclusive right under the Copyright Act to authorize the adaptation, reproduction, performance, distribution and derivative use of said Master.

68.    Defendants' failure to secure Plaintiffs permission regarding the synchronized use of *The American in Me* Composition in an episode of the television program "Trauma" also violates Plaintiffs' rights inasmuch as Plaintiffs Wilsey and O'Brien never entered into any

publishing or administration agreement with Defendant Ferguson, and inasmuch as Plaintiffs Houston and Ingraham terminated their respective Co-Publishing Agreements with Ferguson on or about August 5, 1999, and Plaintiffs therefore retain the exclusive right under the Copyright Act to authorize the adaptation, reproduction, performance, distribution and derivative use of said Composition.

69. Plaintiffs allege that Defendants Ferguson, Anthem Music and Bicycle Music engaged in each of the above acts willfully, and with full knowledge that they had no right to do so.

70. Plaintiffs have complied with all statutory requirements and applied to secure federal statutory copyright for the Compositions under the copyright laws of the United States. As a direct and proximate result of Defendants' acts and omissions related herein, Plaintiffs have suffered actual damages and Defendants have profited from the unauthorized use of Plaintiffs' works in violation of their Copyrights. The exact extent of actual damage suffered by Plaintiffs and profited by Defendants is as yet not ascertained, as the total nature and extent of all unauthorized uses of Plaintiff's works by Defendants is presently unknown. Plaintiffs pray leave to amend this Complaint to set forth additional unauthorized uses of their works by Defendants, and the exact nature of actual damages suffered and the gross revenues received by Defendants in connection with such unauthorized uses, in an amount according to proof at trial.

**SECOND CAUSE OF ACTION**

**Copyright Infringement (The *Pink Album* Masters and Compositions)**

**(Defendants Ferguson, Anthem Music and Bicycle Music)**

71. Plaintiffs repeat and reallege each of the allegations set forth in Paragraphs 1 through 70 inclusive, and by this reference incorporate the same as though fully set forth herein.

72. Despite termination of their License Agreements with Ferguson in August 1999, Defendants Ferguson, Anthem Music and/or Bicycle Music in approximately 2009, and in blatant disregard of Plaintiffs' rights, entered into agreements with IODA and other third parties

concerning the digital distribution of a "remixed," "remastered" and expanded version of Plaintiffs' *Pink Album* comprised of Plaintiff's Masters, including *Open Your Eyes, No Martyr, Desperation, Thin White Line, Paint It Black, The American In Me, White Nigger, Uh Oh, Second to None and F**k You* and five (5) additional recordings not included in the original License Agreements, including *Cheap Tragedies, No Martyr (Alternative Take), Desperation (Alternative Take), Corpus Christi (Alternative Take)* and *Thin White Line (Alternative Take)* via third party vendors of digital downloads and ringtones, including but not limited to, iTunes, Amazon.com, eMusic, Limewire, MySpace, 7Digital and others.

73. Despite termination of the Houston Co-Publishing Agreement and Ingraham Co-Publishing Agreement in approximately August 1999, Defendants Ferguson, Anthem Music and/or Bicycle Music, and in blatant disregard of Plaintiffs' rights, additionally authorized the reproduction and distribution of each of Plaintiffs' Compositions embodied in the *Pink Album* without first obtaining mechanical licenses from Plaintiffs concerning the use and reproduction of said Compositions.

74. Defendants' failure to secure Plaintiffs permission regarding the use of the above Masters and Compositions violates Plaintiffs' rights inasmuch as Plaintiffs retain the exclusive right under the Copyright Act to authorize the adaptation, reproduction, performance and distribution of said Masters and Compositions.

75. Plaintiffs allege that Defendants Ferguson, Anthem Music and Bicycle Music engaged in each of the above acts willfully, and with full knowledge that they had no right to do so.

76. Except for the recordings (*We Are The One, Car Crash* and *I Believe in Me*) and the composition (*Paint It Black*) owned by third parties, Plaintiffs have complied with all statutory requirements and applied to secure federal statutory copyright for each of the Masters and Compositions embodied in the *Pink Album* under the copyright laws of the United States. As a direct and proximate result of Defendants' acts and omissions related herein, Plaintiffs have

suffered actual damages and Defendants have profited from the unauthorized use of Plaintiffs' works in violation of their Copyrights. The exact extent of actual damage suffered by Plaintiffs and profited by Defendants is as yet not ascertained, as the total nature and extent of all unauthorized uses of Plaintiff's works by Defendants is presently unknown. Plaintiffs pray leave to amend this Complaint to set forth additional unauthorized uses of their works by Defendants, and the exact nature of actual damages suffered and the gross revenues received by Defendants in connection with such unauthorized uses, in an amount according to proof at trial.

**THIRD CAUSE OF ACTION**

**Copyright Infringement**

***I Believe in Me* (Composition)**

**(Defendants Ferguson, Anthem Music and Bicycle Music)**

77. Plaintiffs repeat and reallege each of the allegations set forth in Paragraphs 1 through 76 inclusive, and by this reference incorporate the same as though fully set forth herein.

78. On or about August 11, 1982 Plaintiffs Wilsey and O'Brien entered into the *Rat Music* License granting Go! Records the right to include the Master and Composition *Cheap Tragedies* on a compilation of west coast punk bands entitled *Rat Music For Rat People*.

79. At no time did Plaintiffs grant Go! Records or its successors and assigns the right to include any other Masters or Compositions on compilation albums featuring other bands.

80. Despite the limited scope of the *Rat Music* License, in approximately 2009 Defendants Ferguson, Anthem Music and/or Bicycle Music entered into agreements with IODA and other third parties permitting the reproduction and digital distribution of a compilation album entitled *Rat Music For Rat People. Vol. IV* containing the recording *I Believe in Me* (owned by Dangerhouse Records) via third party vendors of digital downloads and ringtones, including but not limited to, iTunes, Amazon.com, eMusic, Limewire, MySpace, 7Digital and others.

81. Plaintiffs retain exclusive rights in and to the Composition *I Believe In Me* based on their prior termination of the Houston Co-Publishing Agreement and Ingraham Co-Publishing

Agreement. and Defendants Ferguson. Anthem Music and/or Bicycle Music violated Plaintiffs' exclusive rights by failing to obtain a mechanical license from Plaintiffs permitting the reproduction of said Composition in the compilation album *Rat Music For Rat People. Vol. IV.*

82. Plaintiffs allege that Defendants Ferguson, Anthem Music and Bicycle Music engaged in each of the above acts willfully, and with full knowledge that they had no right to do so.

83. Plaintiffs have complied with all statutory requirements and applied to secure federal statutory copyright for the Composition *I Believe in Me* under the copyright laws of the United States. As a direct and proximate result of Defendants' acts and omissions related herein, Plaintiffs have suffered actual damages and Defendants have profited from the unauthorized use of Plaintiffs' works in violation of their Copyright. The exact extent of actual damage suffered by Plaintiffs and profited by Defendants is as yet not ascertained, as the total nature and extent of all unauthorized uses of Plaintiff's works by Defendants is presently unknown. Plaintiffs pray leave to amend this Complaint to set forth additional unauthorized uses of their works by Defendants, and the exact nature of actual damages suffered and the gross revenues received by Defendants in connection with such unauthorized uses. in an amount according to proof at trial.

**FOURTH CAUSE OF ACTION**

**Copyright Infringement**

***Tribute to the Avengers* Album**

**(Defendants Ferguson, Anthem Music and Bicycle Music)**

84. Plaintiffs repeat and reallege each of the allegations set forth in Paragraphs 1 through 83 inclusive, and by this reference incorporate the same as though fully set forth herein.

85. In approximately 2009 Defendants Ferguson. Anthem Music and/or Bicycle Music entered into agreements with IODA and other third parties permitting the reproduction and digital distribution of a compilation album entitled *Tribute to the Avengers* via third party

vendors of digital downloads and ringtones, including but not limited to, iTunes, Amazon.com, eMusic, Limewire, MySpace, 7Digital and others.

86. Plaintiffs retain exclusive rights in and to the Compositions embodied on the *Tribute to the Avengers* album based on their prior termination of the Houston Co-Publishing Agreement and Ingraham Co-Publishing Agreement, and Defendants Ferguson, Anthem Music and/or Bicycle Music violated Plaintiffs' exclusive rights by failing to obtain a mechanical license from Plaintiffs permitting the reproduction of said Compositions (including *Uh Oh, Think White Line, Cheap Tragedies, We Are The One, Desperation, Corpus Christi, Open Your Eyes, American in Me, Second to None, No Martyr, Car Crash* and *F**k You*) in the *Tribute to the Avengers* album.

87. Defendants' failure to secure Plaintiffs permission regarding the use of the above Compositions violates Plaintiffs' rights inasmuch as Plaintiffs retain the exclusive right under the Copyright Act to authorize the adaptation, reproduction, performance and distribution of said Compositions.

88. Plaintiffs allege that Defendants Ferguson, Anthem Music and Bicycle Music engaged in each of the above acts willfully, and with full knowledge that they had no right to do so.

89. Plaintiffs have complied with all statutory requirements and applied to secure federal statutory copyright for the and Compositions embodied in the *Tribute to the Avengers* Album under the copyright laws of the United States. As a direct and proximate result of Defendants' acts and omissions related herein, Plaintiffs have suffered actual damages and Defendants have profited from the unauthorized use of Plaintiffs' works in violation of their Copyrights. The exact extent of actual damage suffered by Plaintiffs and profited by Defendants is as yet not ascertained, as the total nature and extent of all unauthorized uses of Plaintiff's works by Defendants is presently unknown. Plaintiffs pray leave to amend this Complaint to set forth additional unauthorized uses of their works by Defendants, and the exact nature of actual

damages suffered and the gross revenues received by Defendants in connection with such unauthorized uses, in an amount according to proof at trial.

**FIFTH CAUSE OF ACTION**

**Copyright Infringement**

***We Are The One* (Composition)**

**(Defendant Ferguson)**

90. Plaintiffs repeat and reallege each of the allegations set forth in Paragraphs 1 through 89 inclusive, and by this reference incorporate the same as though fully set forth herein.

91. Plaintiffs allege on information and belief that in or about 2008 Dangerhouse Records, owner of the recording *We Are The One* entered into an agreement permitting the use of said recording in the independent motion picture "What We Do Is Secret" (the "Film") and accompanying soundtrack album.

92. Plaintiffs further allege on information and belief that in or about 2008 Defendant Ferguson also entered into an agreement with the licensing company Music Rightz permitting use of Plaintiffs' Composition *We Are The One* in the Film and accompanying soundtrack album.

93. Defendant Ferguson lacked the right to authorize use of the Composition *We Are The One* as part of the Film and soundtrack album based on Plaintiffs' prior termination of the Houston Co-Publishing Agreement and Ingraham Co-Publishing Agreement in August 1999.

94. Plaintiffs allege that Defendant Ferguson engaged in each of the above acts willfully, and with full knowledge that they had no right to do so.

95. Plaintiffs have complied with all statutory requirements and applied to secure federal statutory copyright for the Composition *We Are The One* under the copyright laws of the United States. As a direct and proximate result of Defendants' acts and omissions related herein, Plaintiffs have suffered actual damages and Defendants have profited from the unauthorized use of Plaintiffs' works in violation of their Copyright. The exact extent of actual damage suffered by Plaintiffs and profited by Defendants is as yet not ascertained, as the total nature and extent of

all unauthorized uses of Plaintiff's works by Defendants is presently unknown. Plaintiffs pray leave to amend this Complaint to set forth additional unauthorized uses of their works by Defendants, and the exact nature of actual damages suffered and the gross revenues received by Defendants in connection with such unauthorized uses, in an amount according to proof at trial.

**SIXTH CAUSE OF ACTION**

**Declaratory Judgment – *Pink Album* License Agreements**

**(Defendant Ferguson, Anthem Music and Bicycle Music)**

96. Plaintiffs repeat and reallege each of the allegations set forth in Paragraphs 1 through 95 inclusive, and by this reference incorporate the same as though fully set forth herein.

97. Plaintiffs contend that the License Agreements for the *Pink Album* were non-exclusive "at will" licenses permitting duplication of the Masters only in the form of Phonorecords, and that those respective licenses were terminated in August 5, 1999 by letter to Ferguson's legal counsel.

98. Defendant Ferguson alternately contends that Plaintiffs never terminated the License Agreements, and that he retains exclusive rights in the Masters under the License Agreements, including the right to license said Masters for film and other uses.

99. Accordingly, pursuant to 17 U.S.C. Sections 101 *et seq*. and 28 U.S.C. Section 2201, Plaintiffs seek a declaratory judgment as to whether Defendant Ferguson retains the right to exploit the *Pink Album* Masters pursuant to Plaintiffs' License Agreements, or whether those License Agreements were effectively terminated in August 1999. Based on their ownership of the Masters, Plaintiffs additionally seek declaratory relief in the form of a judgment providing that any and all assignments, transfers and licenses of the Masters by Ferguson or his agents and assigns are null and void.

///

///

**SEVENTH CAUSE OF ACTION**

**Declaratory Judgment – Houston/Ingraham Co-Publishing Agreements**

**(Defendant Ferguson, Anthem Music and Bicycle Music)**

100. Plaintiffs repeat and reallege each of the allegations set forth in Paragraphs 1 through 99 inclusive, and by this reference incorporate the same as though fully set forth herein.

101. A dispute exists as to whether Defendant Ferguson ever acquired the right to exploit the Compositions and collect income from the Compositions on behalf of Plaintiffs Wilsey and O'Brien.

102. Plaintiffs Wilsey and O'Brien contend they never signed any publishing or administration agreement with Ferguson and that said Defendant lacks any rights to administer or publish their respective copyright interests in the Compositions. Defendant Ferguson alternately contends that the Houston and Ingraham Co-Publishing Agreements were sufficient to transfer Wilsey's and O'Brien's respective copyright interests in the Compositions to him and his various companies.

103. A dispute has also arisen in that Plaintiffs contend that the Houston Co-Publishing Agreement and Ingraham Co-Publishing Agreement were rescinded in August 1999, whereas Defendant Ferguson alleges that any attempts by Plaintiffs to rescind the Co-Publishing Agreements were ineffective.

104. Accordingly, pursuant to 17 U.S.C. Sections 101 *et seq.* and 28 U.S.C. Section 2201, Plaintiffs, and each of them, seek a declaratory judgment as to whether they are bound by the terms of the Houston Co-Publishing Agreement dated March 5, 1984 and the Ingraham Co-Publishing Agreement dated March 21, 1984. Based on their ownership of the Composition, Plaintiffs additionally seek declaratory relief in the form of a judgment providing that any and all assignments, transfers and licenses as to the Compositions by Ferguson and his agents and assigns are null and void.

**EIGHTH CAUSE OF ACTION**

**Declaratory Judgment – *Live at Winterland* Masters**

**(Defendant Ferguson, Anthem Music and Bicycle Music)**

105. Plaintiffs repeat and reallege each of the allegations set forth in Paragraphs 1 through 104 inclusive, and by this reference incorporate the same as though fully set forth herein.

106. On or about January 14, 1978, Plaintiffs' band The Avengers performed at Winterland Auditorium opening for the Sex Pistols. At the concert The Avengers performed numerous compositions identified herein, including: *The American in Me, Desperation, Open Your Eyes, No Martyr, Teenage Rebel, We Are The One, I Believe In Me* and *Car Crash* in addition to *Friends of Mine, Crazy Homicide, The End of the World* and *Summer of Hate* and a cover version of the Rolling Stones song *Paint It Black*.

107. The Sex Pistols final performance at Winterland Auditorium in 1978 was an historic event and the entire concert was recorded and videotaped by several entities, including the radio station KSAN, Target Video and Bill Graham Presents, the concert's producer.

108. All copyright in and to sound recordings of The Avengers' live performance at Winterland created by Bill Graham Presents (the "Winterland Masters") continue to be owned by Plaintiffs, and registration of said Winterland Masters by Plaintiffs is pending with the United States Copyright Office pursuant to Registration Application No. SR 1-374330742 submitted to the Register of Copyrights on or about April 14, 2010. Said Master constitutes copyrightable subject matter under the laws of the United States.

109. In consideration for settlement of a 1993 lawsuit commenced by Buried Treasure, Inc. against Frontier Records (see Paragraph 41 *supra*) Plaintiff Houston on or about October 8, 1997 granted Ferguson her interest in a recording of The Avengers' 1978 Winterland performance that was recorded at that event by Ferguson (the "Winterland Agreement"). Pursuant to the Winterland Agreement, Ferguson agreed to pay Houston a royalty of six percent

(6%) of the actual retail price for sales of said recording, with accounting statements and royalties to be provided on a semi-annual basis.

110.   At no time did Plaintiffs Ingraham, Wilsey nor O'Brien enter into any agreements with Ferguson concerning their respective rights in the Winterland performance, nor did said Plaintiffs authorize Houston to enter into any agreements on their behalf with respect to any recordings of their Winterland performance.  Because any transfer of copyright interest, other than one by operation of law, is not valid unless set forth in an instrument of conveyance signed by the owner of the rights conveyed or their duly authorized agent pursuant to 17 U.S.C. Section 204(a), said Plaintiffs have at all relevant times retained 100% of their respective ownership interests in and to the *Live at Winterland* Masters.

111.   Pursuant to the Winterland Agreement, in approximately 2009 Ferguson, Anthem Music and/or Bicycle Music entered into agreements with IODA and other companies concerning the digital distribution of a *Live at Winterland* album via digital music retailers, including but not limited to, iTunes, Amazon.com, eMusic, Limewire, MySpace, 7Digital and others.  A true and correct copy of internet printouts documenting the unauthorized distribution of the *Live at Winterland* album is attached hereto as **Exhibit P** and incorporated herein by this reference.

112.   A dispute has arisen in that Plaintiffs contend Ferguson acquired only Plaintiff Houston's twenty-five percent (25%) interest in the Winterland Masters and that Plaintiffs Ingraham, Wilsey and O'Brien retain their seventy-five percent (75%) interest in the Winterland Masters, whereas Defendant Ferguson contends that he acquired one-hundred percent (100%) of all rights (including copyright) in and to the Winterland Masters pursuant to the Winterland Agreement.

113.   A dispute has also arisen in that Plaintiffs contend that the Winterland Agreement signed by Houston is expressly limited to *recordings made by Ferguson* at the January 1978 Winterland concert, whereas Plaintiffs allege the *Live At Winterland* album released by Ferguson

consists of the audio track taken from a video recording of that event created by the concert's promoter. Bill Graham Presents. Defendant Ferguson alternately contends that the Winterland Agreement permits him to release any third party recording of The Avengers performance at Winterland, regardless of who created it and without the need for any additional permissions.

114. Accordingly, pursuant to 17 U.S.C. Sections 101 *et seq*. and 28 U.S.C. Section 2201. Plaintiffs seek a declaratory judgment that a) the Winterland Agreement is limited in scope to recordings *created by Ferguson* at the January 1978 Winterland concert. and b) that any grant of rights to Ferguson in said master recordings is limited to Plaintiff Houston's 25% interest, with Plaintiffs Ingraham, Wilsey and O'Brien retaining their 75% copyright interest in the *Live at Winterland* Masters.

**NINTH CAUSE OF ACTION**

**Breach of *Pink Album* License Agreements**

**(Defendant Ferguson only)**

115. Plaintiffs repeat and reallege each of the allegations set forth in Paragraphs 1 through 114 inclusive, and by this reference incorporate the same as though fully set forth herein.

116. Paragraph 3 of each *Pink Album* License signed by Plaintiffs states that Plaintiffs shall receive six (6%) of the retail price for ninety-percent (90%) of all phonorecords manufactured, sold and non-returnable, and Paragraph 5 states that such royalty payments shall be paid within ninety (90) days after the conclusion of each semi-annual accounting period.

117. To the extent Plaintiffs' August 1999 termination of their respective *Pink Album* Licenses are deemed ineffective (which Plaintiffs deny). Plaintiffs allege that Defendant Ferguson is in breach thereof by failing to pay, and thereby appropriating for his own use, royalties and other income owed to Plaintiffs under said agreements, by failing to provide Plaintiffs with accounting statements (and accrued royalties) throughout the term of the License Agreements, by remixing and remastering the Masters without Plaintiffs' approval, and by licensing the Masters to third parties for non-Phonorecord uses, including licensing the Master

*The American In Me* for use in an episode of the NBC-Universal television program "Trauma" entitled *All's Fair*.

118. Plaintiffs have performed all conditions, covenants, and promises required to be performed by them in accordance with the terms and conditions of their respective License Agreements.

119. As a direct and approximate result of Defendant Ferguson's breach of the License Agreements. Plaintiffs have been damaged in an unknown amount, to be established according to proof at trial.

**TENTH CAUSE OF ACTION**

**Breach of Producer Agreement**

**(Defendant Ferguson only)**

120. Plaintiffs repeat and reallege each of the allegations set forth in Paragraphs 1 through 119 inclusive, and by this reference incorporate the same as though fully set forth herein.

121. The Producer Agreement for the *Pink Album* provides that Plaintiff Wilsey is to receive an additional royalty of one (1%) of the retail price for ninety-percent (90%) of all phonorecords manufactured, sold and non-returnable, and that such royalty payments shall be paid semi-annually.

122. To the extent the Producer Agreements is deemed valid and binding, Plaintiff Wilsey alleges that Defendant Ferguson has breached the Producer Agreement by failing to pay, and thereby appropriating for his own use, any income owed under said agreements and by failing to provide accounting statements (and accrued royalties) throughout the term of the Producer Agreement.

123. Plaintiff Wilsey has performed all conditions, covenants, and promises required to be performed by them in accordance with the terms and conditions of the Producer Agreement.

124. As a direct and approximate result of Defendant Ferguson's breach of the Producer Agreement, Plaintiffs Wilsey has been damaged in an unknown amount, to be established according to proof at trial.

**ELEVENTH CAUSE OF ACTION**

**Breach of *Rat Music* License**

**(Defendant Ferguson only)**

125. Plaintiffs repeat and reallege each of the allegations set forth in Paragraphs 1 through 124 inclusive, and by this reference incorporate the same as though fully set forth herein.

126. Paragraph 3 of the *Rat Music* License provides that Plaintiffs are to receive one percent (1%) of the retail price for ninety percent (90%) of all phonorecords manufactured, sold and non-returnable, and Paragraph 4 states that royalty payments shall be paid to the writers within ninety (90) days after the conclusion of each semi-annual accounting period.

127. Plaintiffs allege that Defendant Ferguson has breached said agreement by failing to pay, and thereby appropriating for his own use, income owed to Plaintiffs under said *Rat Music* License, by failing to provide Plaintiffs with any accounting or royalties accrued during the term of the *Rat Music* License, by remixing and remastering the *Cheap Tragedies* Master for release on the *Rat Music For Rat People Vol. 1* digital compilation without Plaintiffs' approval, and by Defendants' unauthorized inclusion of the Master and Composition *I Believe in Me* in connection with a separate compilation album entitled *Rat Music For Rat People, Vol. IV.*

128. Plaintiffs have performed all conditions, covenants, and promises required to be performed by them in accordance with the terms and conditions of the *Rat Music* License.

129. As a direct and approximate result of Defendant Ferguson's breach of the *Rat Music* License, Plaintiffs have been damaged in an unknown amount, to be established according to proof at trial.

///

**TWELFTH CAUSE OF ACTION**

**Breach of Houston Co-Publishing Agreement**

**(Plaintiff Houston, as to Defendant Ferguson only)**

130. Plaintiffs repeat and reallege each of the allegations set forth in Paragraphs 1 through 129 inclusive, and by this reference incorporate the same as though fully set forth herein.

131. In 1985. Plaintiff Houston entered into a Co-Publishing Agreement with Ferguson's company CD Presents. Ltd.

132. Paragraph 5 of the Houston Co-Publishing Agreement provides that Plaintiff Houston shall receive fifty-percent (50%) of all income collected as a result of said agreement, and Paragraph 7 states that royalty payments shall be paid to Houston within ninety (90) days after the conclusion of each semi-annual accounting period.

133. To the extent the Houston Co-Publishing Agreement is deemed valid and binding despite Plaintiff's August 1999 termination thereof. Plaintiffs allege that Defendant Ferguson is in breach of the Co-Publishing Agreement by failing to provide accounting statements and by failing to pay, and thereby appropriating for his own use, any income owed thereunder since at least 1985.

134. Plaintiff has performed all conditions, covenants, and promises required to be performed by her in accordance with the terms and conditions of said Co-Publishing Agreement.

135. As a direct and approximate result of Defendant Ferguson's breach of the Houston Co-Publishing Agreement, said Plaintiff has been damaged in an unknown amount, to be established according to proof at trial.

**THIRTEENTH CAUSE OF ACTION**

**Breach of Ingraham Co-Publishing Agreement**

**(Plaintiff Ingraham as to Defendant Ferguson only)**

136. Plaintiffs repeat and reallege each of the allegations set forth in Paragraphs 1 through 135 inclusive, and by this reference incorporate the same as though fully set forth herein.

137. In 1985, Plaintiff Ingraham entered into a Co-Publishing Agreement with Ferguson's company CD Presents, Ltd.

138. Paragraph 5 of the Ingraham Co-Publishing Agreement provides that Ingraham shall receive fifty-percent (50%) of all income collected as a result of said agreement, and Paragraph 7 states that royalty payments shall be paid to Ingraham within ninety (90) days after the conclusion of each semi-annual accounting period.

139. To the extent the Ingraham Co-Publishing Agreement is deemed valid and binding despite Plaintiff's August 1999 termination thereof, Plaintiffs allege that Defendant Ferguson is in breach of the Co-Publishing Agreement by failing to provide accounting statements and by failing to pay, and thereby appropriating for his own use, any income owed thereunder since at least 1985.

140. Plaintiff has performed all conditions, covenants, and promises required to be performed by him in accordance with the terms and conditions of said Co-Publishing Agreement.

141. As a direct and approximate result of Defendant Ferguson's breach of the Ingraham Co-Publishing Agreement, said Plaintiff has been damaged in an unknown amount, to be established according to proof at trial.

**FOURTEENTH CAUSE OF ACTION**

**Breach of Covenant of Good Faith and Fair Dealing**

**(Defendant Ferguson only)**

142. Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 141 herein.

143. At all relevant times and for each separate agreement identified herein, Defendant Ferguson owed to Plaintiffs the implied covenant to conduct his business affairs with respect to Plaintiffs' in a fair and ethical manner and in a manner that was not designed or intended to be in bad faith or in contravention of Plaintiffs' rights under their respective agreements, including

without limitation the various *Pink Album* Licenses, the Producer Agreement, the Houston Co-Publishing Agreement, the Ingraham Co-Publishing Agreement and the *Rat Music* License.

144. Plaintiffs each placed confidence in and relied on Ferguson that he would act in good faith in his dealings with Plaintiffs.

145. Defendant Ferguson breached the covenant of good faith and fair dealing implied in each separate agreement with Plaintiffs by doing the acts and/or failing to act as described herein, including but not limited to, by failing to provide accounting statements to Plaintiffs, by failing to pay, and thereby appropriating for his own use, any income owed under said agreements, by failing to register the Compositions with applicable performance rights societies, and by engaging in acts of fraud against Plaintiff Wilsey, Plaintiff O'Brien and the Copyright Office with respect to the registration of certain Compositions as set forth hereinbelow.

146. As a direct and approximate result of the acts and omissions of Ferguson, Plaintiffs have been damaged in an amount to be established according to proof at trial.

147. The actions and omissions of Ferguson were willful, malicious and oppressive and designed and intended to cause harm to Plaintiffs and by reason thereof, Plaintiffs are entitled to an award of exemplary or punitive damages in an amount deemed necessary by this court to punish and deter such actions in the future.

## FIFTEENTH CAUSE OF ACTION

### Fraud

### (Defendant Ferguson only)

148. Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 147 herein.

149. At all relevant times, Ferguson has falsely represented to BMI, Anthem Music, Bicycle Music, Film 44, NBC-Universal, IODA and other third parties that he retains the right to exclusively administer music publishing rights, and collect music publishing income, on behalf

of Plaintiffs Houston. Ingraham, Wilsey and O'Brien. in willful disregard of their individual rights as co-authors and joint copyright owners of the Compositions.

150. The above representations were made by Ferguson with the intent of deceiving third parties into believing that said Defendant retains the right to administer Plaintiff Wilsey and Plaintiff's O'Brien's copyright interest in the Compositions despite the lack of any agreement with said Plaintiffs, and with the intent of retaining Plaintiff Wilsey's and Plaintiff O'Brien's respective shares of publishing income in the Compositions for himself.

151. The above representations were also made by Ferguson with the intent of deceiving third parties into believing that said Defendant retains exclusive publishing rights in the Compositions despite the August 1999 termination of the Houston Co-Publishing Agreement and Ingraham Co-Publishing Agreement by said Plaintiffs, and with the intent to retain said Plaintiffs' share of publishing income in the Compositions for himself.

152. In furtherance of the above, Ferguson has knowingly and intentionally engaged in acts intended to deceive third parties into believing Plaintiffs do not own rights in and to their Compositions or that said Plaintiffs are not otherwise entitled to receive income earned from the exploitation of their Compositions, including without limitation a) making false representations to Bicycle Music and other third parties regarding his right to administer Plaintiffs' copyright interests in the Compositions, b) the filing of false registration certificates with the Copyright Office that intentionally omit any reference to Wilsey's and O'Brien's co-authorship and co-ownership of the Compositions *We Are The One*, *Car Crash* and *I Believe in Me*, c) the filing of false recordation documents with the Copyright Office which purport to transfer to Ferguson Plaintiff Wilsey's and Plaintiff O'Brien's respective copyright interest in the White Noise EP Compositions; and d) the false filing of copyright registration certificates that purport to reflect a transfer of copyright interest in and to certain sound recordings, including the Master *The American In Me*. True and correct copies of Registration Certificate No. PA 551 821 (*We Are The One*); PA 582-691 *(I Believe In Me)* and PA 582-692 (*Car Crash*) submitted by Ferguson

which falsely identify Plaintiffs Houston and Ingraham as sole authors of *We Are The One*, *Car Crash* and *I Believe In Me* are attached hereto as **Exhibit Q** and incorporated herein by this reference. A true and correct copy of the "Certificate of Recordation" filed by Ferguson which falsely reflects a transfer of Plaintiff Wilsey's and Plaintiff O'Brien's copyright interest in the Compositions to Ferguson is attached hereto as **Exhibit R** and incorporated herein by this reference. A true and correct copy of Registration Certificate No. SR 137 683 (*The Amerikan In Me* (sic)) submitted by Defendant Ferguson which falsely identifies Houston and Ingraham as sole authors of the Master and purports to reflect a "Transfer of all authors' rights by written contract" is attached hereto as **Exhibit S** and incorporated herein by this reference.

153. When Ferguson made each of the above representations, he knew them to be false, and these representations were made by Defendant with the intent to defraud and deceive Plaintiffs.

154. As a proximate results of Ferguson's fraud and the facts alleged in this Complaint, Ferguson was unjustly enriched and Plaintiffs were unjustly deprived of publishing income they are rightfully entitled to as co-authors and co-owners of the Compositions.

155. In doing the acts alleged herein, Defendant acted with oppression, fraud and malice, and Plaintiffs are therefore entitled to punitive damages in an amount according to proof.

**SIXTEENTH CAUSE OF ACTION**

**Fraudulent Inducement of Contract**

**(Defendant Ferguson only)**

156. Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 155 herein.

157. By entering into the license agreements with Plaintiffs (including the *Pink Album* Licenses and *Rat Music* License) and the Producer Agreement with Wilsey, Ferguson promised that he would commercially release only certain Masters specifically identified in those agreements, that he would exploit those Masters only in form of Phonorecords, that he would not

alter the Masters without Plaintiffs' prior consent, that he would provide semi-annual accounting statements to Plaintiffs and that he would make payment of accrued royalties to Plaintiffs on a semi-annual basis.

158. By entering into the Producer Agreement with Plaintiff Wilsey, Ferguson further promised that he would provide semi-annual accounting statements and make payment of accrued royalties to Plaintiff.

159. By entering into separate Co-Publishing Agreements with Plaintiff Houston and Plaintiff Ingraham, Ferguson further promised that he would administer their respective rights in and to the compositions (including without limitation, register said compositions with the Copyright Office and applicable performing rights societies such as BMI or ASCAP) and distribute fifty percent (50%) of gross income earned from the exploitation of said Compositions to said Plaintiffs.

160. By entering into the Winterland Agreement with Plaintiff Houston, Defendant Ferguson further promised that he would commercially release only those recordings that he himself had previously made of the Avengers' January 1978 performance at Winterland Auditorium.

161. At the time Ferguson made the above promises to Plaintiffs, he had no intention of performing those promises.

162. When Ferguson made these representations, he knew them to be false, and these representations were made with the intent to defraud and deceive Plaintiffs and with the intent to induce Plaintiffs to rely on Defendant's representations in the manner herein alleged.

163. Plaintiffs, at the time these representations were made by Ferguson, were ignorant of the falsity of his representations and believed them to be true.

164. As a proximate results of Ferguson's fraud and the facts alleged in this Complaint, Plaintiffs were misled into believing that Ferguson would abide by the terms of said agreements, including without limitation, delivery of accounting statements and payment of royalties on a

semi-annual basis, releasing Masters in the form of Phonorecords only and obtaining consent prior to making alterations to their recorded legacy, and by reason of which Plaintiffs have been damaged in an amount to be established according to proof at trial.

165. In doing the acts alleged herein, Defendant acted with oppression, fraud and malice, and Plaintiffs are therefore entitled to punitive damages in an amount according to proof.

**SEVENTEENTH CAUSE OF ACTION**

**Conversion**

**(Defendants Ferguson, Anthem Music and Bicycle Music)**

166. Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 165 herein.

167. At all times herein mentioned, Plaintiffs were, and still are, entitled to their respective shares of income from exploitation of their Masters and Compositions.

168. At all times herein mentioned. Defendants Ferguson, Anthem Music and Bicycle Music appropriated Plaintiffs profits derived from the exploitation of their Masters and Compositions and converted the same to their own use.

169. On or about February 10, 2008, December 10, 2008 and October 21, 2009, Plaintiffs demanded immediate return of their property but Defendants continue to wrongfully hold Plaintiffs' money.

170. As a direct and proximate result of said Defendants' conversion, Plaintiffs have incurred and will incur damages in an amount to be established according to proof at trial.

171. The aforementioned acts of Defendant Ferguson were willful, wanton, malicious, and oppressive, were undertaken with the intent to defraud, and justify the awarding of exemplary and punitive damages in an amount according to proof.

///

**EIGHTEENTH CAUSE OF ACTION**

**Request for Accounting**

**(Defendants Ferguson, Anthem Music and Bicycle Music)**

172. Plaintiffs repeat and reallege each of the allegations set forth in Paragraphs 1 through 171 inclusive, and by this reference incorporates the same as though fully set forth herein

173. As a result of the infringement and other wrongful acts of Defendants Ferguson, Anthem Music and Bicycle Music, Plaintiffs allege they are entitled to an accounting from said Defendants as to those amounts derived from their unauthorized exploitation of Plaintiffs' Masters and Compositions, so that Plaintiffs may determine the revenues and profits rightfully belonging to them and wrongfully earned by said Defendants.

**NINETEENTH CAUSE OF ACTION**

**Request for Constructive Trust**

**(Defendants Ferguson, Anthem Music and Bicycle Music)**

174. Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 173 herein.

175. By reason of the fraudulent and otherwise wrongful manner in which Defendants have acted, said Defendants, and each of them, have no legal or equitable right, claim or interest in or to the Masters (including Plaintiffs' original multi-track recordings of same) and Compositions. Instead, Defendants are involuntary trustees holding said property and profits therefrom in constructive trust for Plaintiffs with the duty to convey the same to Plaintiffs forthwith.

///

///

///

**TWENTIETH CAUSE OF ACTION**

**Injunctive Relief**

**(All Defendants)**

176. Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 175 herein.

177. Defendants' ongoing exploitation of Plaintiffs' copyrights in the Masters and Compositions without permission, their withholding of revenues from Plaintiffs with no prospect of recovery and their fraudulent acts have caused, and will continue to cause, Plaintiffs irreparable harm for which there is no adequate remedy at law, thereby justifying the issuance of a preliminary injunction and permanent injunction to enjoin and restrain such conduct.

**WHEREFORE**, Plaintiff prays judgment against each of the Defendants identified above, as follows:

1. That this Court grant a permanent injunction forever enjoining Defendants, Defendants' servants, and agents, and anyone acting on behalf of Defendants, from directly or indirectly using Plaintiff's Masters and Compositions or any other work based upon the Masters and Compositions in any manner which infringes upon Plaintiffs' copyrights.

2. Direct Defendants, and each of them, to file with the Court and serve on Plaintiffs a report setting forth the manner and form in which compliance with said permanent injunction against infringement has been made.

3. At the election of Plaintiffs, said election to be made at any time before entry of final judgment, as authorized by 17 U.S.C. §504, that Defendants, and each of them, be required to pay damages to Plaintiffs of either:

(a) Such actual damage as Plaintiffs have sustained as a consequence of Defendants' infringement of Plaintiffs' copyrights, together with any profits of Defendants that are attributable to said infringement and are not taken into account in computing said actual damages pursuant to 17 U.S.C. §504(b); or

(b) Statutory damages in the sum of one hundred and fifty thousand dollars ($150.000.00) for each willful infringement by Defendants of Plaintiffs copyright in their Masters and Compositions, as authorized by 17 U.S.C. §504(c)(2).

4. That Defendants, and each of them, be ordered to return to Plaintiffs all original multi-track tapes, two-track masters and other physical media embodying Plaintiffs' audio or audio-visual performances:

5. That Defendants, and each of them, be ordered to render an accounting to Plaintiffs of the gross receipts obtained from their exploitation of the Masters and Compositions and other derivatives based thereon, in which Plaintiff's Masters and Compositions were commercially utilized, through the date that each Defendant ceases their infringing use.

6. That this Court issue a declaration that all agreements between Plaintiffs and Defendants are rescinded and/or terminated, and that Plaintiffs retain the sole and exclusive right to administer and collect all income and payments attributable to their recordings and musical compositions, including the Masters and Compositions set forth herein.

7. That Plaintiffs be awarded their actual damages, with such monetary award trebled.

8. That Plaintiffs be awarded punitive damages in an amount according to proof.

9. That the Court impose a constructive trust upon such sums by which it may be found Defendants have been unjustly enriched, and for such other forms of equitable and legal relief as may be reasonable including but not limited to declaratory judgment and findings in favor of Plaintiff.

10. That Plaintiffs be awarded pre-judgment and post-judgment interest at the legal rate on each sum not timely paid to them;

11. That Defendants be ordered to reimburse Plaintiffs their attorneys' fees and reasonable costs incurred in connection with the aforementioned action; and

11. For such other and further relief as the Court deems just and appropriate in the premises.

**JURY DEMAND**

Plaintiff respectfully demands a jury trial of all issues in this case.

Dated: April 30, 2010

LAW OFFICE OF ALAN KORN

By: ______________________

ALAN KORN
Attorneys for Plaintiffs,
Penelope Houston, Greg Ingraham
James Wilsey and Daniel O'Brien