United States District Court
For the Northern District of California

1

2

3

4

5                          **NOT FOR PUBLICATION**

6                 IN THE UNITED STATES DISTRICT COURT

7

8                 FOR THE NORTHERN DISTRICT OF CALIFORNIA

9   PENELOPE HOUSTON, et al.,                    No. C 10-01881 JSW

10          Plaintiffs,                          **ORDER GRANTING, IN PART,**
                                                 **AND DENYING, IN PART,**
11     v.                                        **DEFENDANT'S MOTION TO**
                                                 **DISMISS PLAINTIFFS' CLAIMS**
12   DAVID FERGUSON, et al.,                     **SIX, SEVEN, EIGHT, FIFTEEN,**
                                                 **AND SEVENTEEN.**
13          Defendants.

14   _____/

15

16          Now before the Court is the motion to dismiss filed by defendant David Ferguson

17   ("Ferguson").  Having considered the parties' papers, the relevant legal authority, and the

18   record in this case, this Court GRANTS IN PART and DENIES IN PART Ferguson's motion to

19   dismiss.

20                          **BACKGROUND**

21          Plaintiffs Penelope Houston ("Houston"), Greg Ingraham ("Ingraham"), Daniel O'Brien

22   ("O'Brien"), and James Wilsey ("Wilsey") (collectively "Plaintiffs") were members in the '70s

23   punk rock band "The Avengers."  Plaintiffs allege that Ferguson has violated their copyrights in

24   several of their recorded performances.[1]

25   **A.     The *Pink Album* License Agreements (Claim Six).**

26          Plaintiffs allege that between 1983 and 1985 they each entered individual non-exclusive

27   licensing agreements with Ferguson, through his companies Go! Records and CD Presents,

28   _____

      [1]      Although the complaint alleges multiple copyright violations against multiple
      defendants, all other defendants have been dismissed.  Thus, this motion only concerns the
      claims against Ferguson.

Ltd., (hereinafter "*Pink Album* Agreements") regarding their interests in fourteen master recordings (hereinafter "*Pink Album* Masters"). (Compl. ¶¶ 22, 27-29, 32-34, 37.) Plaintiffs allege that, pursuant to the *Pink Album* Agreements, Ferguson had the right to publish a fourteen-track compilation album in the form of phonorecords only. (*Id.*)

From 1982 through the 1990s, Ferguson allegedly manufactured and sold over 100,000 copies of the *Pink Album* Masters. (*Id.* ¶ 40.) However, Ferguson did not pay the Plaintiffs royalties due under the *Pink Album* Agreements. (*Id.*) Thus, on August 5, 1999, Plaintiffs sent Ferguson a letter rescinding the *Pink Album* Agreements. (*Id.* ¶¶ 47-48.) Plaintiffs further allege that Ferguson resumed selling and licensing the *Pink Album* Masters in 2008 or 2009. (*Id.* ¶ 49.)

According to Plaintiffs, in 2008, they again notified Ferguson that he did not have the right to exploit the *Pink Album* Masters. However, Plaintiffs allege that, in 2008 or 2009, Ferguson entered into agreements with third parties to allow reproduction and distribution of the *Pink Album* Masters. (*Id.* ¶¶ 62, 63(b).) Plaintiffs also allege that Ferguson's agreements with these third parties to reproduce and distribute the *Pink Album* Masters infringed their copyrights in said works. (*Id.* ¶¶ 71-76.)

**B.    The Houston and Ingraham Co-Publishing Agreements (Claim Seven).**

On or about March 21, 1984, and March 5, 1985, Ingraham and Houston, respectively, entered into separate co-publishing agreements (hereinafter "Ingraham/Houston Co-Publishing Agreements") with Ferguson's company CD Presents, Ltd. (*Id.* ¶¶ 35, 38.) In the Ingraham/Houston Co-Publishing Agreements, both Houston and Ingraham agreed that CD Presents, Ltd. would own an undivided 50% interest in Houston's and Ingraham's respective copyright interests in fourteen Avengers compositions.[2] (*Id.*)

Houston and Ingraham allege that they each terminated their co-publishing agreements by letter on or about August 5, 1999. (*Id.* ¶ 48.) Plaintiffs allege that notwithstanding

---

[2]    The jointly owned compositions included: *We are The One, Car Crash, I Believe in Me, The American In Me, Corpus Christi, Uh Oh, White Nigger, Open Your Eyes, Desperation, Thin White Line, No Martyr, F\*\*k You, Cheap Tragedies* and *Second to None*. Houston and Ingraham originally each owned a 25% interest in the fourteen compositions.

*United States District Court*
For the Northern District of California

Houston's and Ingraham's termination of these agreements, Ferguson continues to exploit The Avengers' compositions transferred by the Ingraham/Houston Co-Publishing Agreements.  (*Id.* ¶¶ 65-89.)

**C.      The Live at Winterland Masters (Claim Eight).**

In 1978, Plaintiffs performed as the opening act for the Sex Pistols at the Winterland auditorium (hereinafter "Winterland Performance").  (*Id.* ¶ 106.)  Plaintiffs allege that Houston transferred her 25% interest in recordings made by Ferguson of the Winterland Performance to Ferguson (hereinafter "Winterland Agreement").  (*Id.* ¶ 109.)  Ferguson allegedly has entered into digital distribution agreements with third parties regarding the Winterland Performance.  (*Id.* ¶ 111.)  Plaintiffs dispute Ferguson's right to income from those recordings and his right to distribute third-party recordings of the Winterland Performance under the Winterland Agreement.  (*Id.* ¶ 112.)

**D.      Fraud and Conversion (Claims Fifteen and Seventeen).**

Plaintiffs claim that sometime in 2008 or 2009, Ferguson made representations to third parties that Ferguson, on behalf of the Plaintiffs, had the right to exclusively administer music publishing rights and collect music publishing income.  Plaintiffs allege Ferguson made these representations despite the fact that they terminated the Ingraham/Houston Co-Publishing Agreements in 1999.   (*Id.* ¶¶ 149, 151.)

Plaintiffs also allege that Ferguson filed false registration certificates with the Copyright Office, which intentionally omit reference to Wilsey and O'Brien; filed false recordation documents with the Copyright Office, which purport to transfer Wilsey's and O'Brien's copyright interests to Ferguson; and filed other false documents, which purport to transfer copyright interests in other of Plaintiffs' recordings.  (*Id.* ¶ 152, Exs. Q, R, S.)  They further allege that Ferguson knew his representations were false, the representations were intended to deceive Plaintiffs, and Ferguson unjustly deprived them of income to which they are entitled.  (*Id.* ¶¶ 153-54.)

Plaintiffs also allege that Ferguson collected profits from the exploitation of their copyrighted works, including approximately $3,000 from Rhino Records.  (*Id.* ¶¶ 63(f), 168.)

1    They also allege that they have a right to all the income derived from their recordings, they

2    demanded Ferguson give them their money, but he refused and continues to hold their money.

3    (*Id.* ¶¶ 167, 169.)

4        Based on these and other allegations, Plaintiffs assert claims for copyright infringement

5    (claims one through five), declaratory relief (claims six through eight), fraud (claim fifteen),

6    and conversion (claim seventeen) as well as several other claims not germane to this motion.

7    Ferguson only moves to dismiss claims six, seven, eight, fifteen, and seventeen.  (Def. Mot. to

8    Dismiss at 2-3.)

9                                          **ANALYSIS**

10   **A.     Legal Standard on a Motion to Dismiss.**

11       A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the

12   pleadings fail to state a claim upon which relief can be granted.  The Court's "inquiry is limited

13   to the allegations in the complaint, which are accepted as true and construed in the light most

14   favorable to the plaintiff."  *Lazy Y Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

15   Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a

16   plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than

17   labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

18   do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S.

19   265, 286 (1986)).

20       Pursuant to *Twombly*, a plaintiff must not merely allege conduct that is conceivable but

21   must instead allege "enough facts to state a claim to relief that is plausible on its face."  *Id.* at

22   570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

23   court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

24   *Ashcroft v. Iqbal*, 556 U.S. __, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556).

25   If the allegations are insufficient to state a claim, a court should grant leave to amend, unless

26   amendment would be futile.  *See, e.g.*, *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir.

27   1990); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th

28   Cir. 1990).

**United States District Court**
For the Northern District of California

4

**United States District Court**
For the Northern District of California

**B.     Defendant's Motion is Granted in Part.**

Ferguson moves to dismiss (1) claims six through eight as both preempted by the

Copyright Act and duplicative of Plaintiffs' copyright claims; (2) claim fifteen for failure to

state a cause of action for fraud; and (3) claim seventeen for failure to state a claim for

conversion.

**1.     Defendant's Motion to Dismiss Plaintiffs' Requests For Declaratory Relief is Granted in Part and Denied in Part (Claims Six, Seven, and Eight).**

In claims six, seven, and eight, Plaintiffs request a declaration from this Court regarding

the parties' respective ownership of the recordings at issue.  Ferguson argues that the claims are

preempted by the Copyright Act and, even if not preempted, should be dismissed because they

are duplicative of claims one through five, in which Plaintiffs specifically allege copyright

infringement.

**a.     This Court declines jurisdiction over claims six and seven, but shall exercise jurisdiction over claim eight.**

This Court first addresses Ferguson's argument that claims six through eight are

duplicative of claims one through five.  The Declaratory Judgment Act allows a district court

"upon appropriate pleading, [to] declare the rights and other legal relations of any interested

party seeking such declaration...."  28 U.S.C. § 2201.  However, in doing so, a district court

should avoid duplicative litigation.  *See Principal Life Ins. Co. v. Petula Assocs.*, 394 F.3d 665,

669 (9th Cir. 2005).  "A claim for declaratory relief is unnecessary where an adequate remedy

exists under some other cause of action."  *Permpoon v. Wells Fargo Bank Nat'l Ass'n*, No. 09-

CV-01140-H, 2009 U.S. Dist. LEXIS 89723, at *14-15 (S.D. Cal. Sept. 29, 2009) (quoting

*Manown v. Cal-Western Reconveyance Corp.*, 2009 U.S. Dist. LEXIS 68392, at *17-18 (S.D.

Cal. Aug. 4, 2009)).

Claims six and seven are duplicative of claims one through five.  Claims one through

five allege that Ferguson infringed Plaintiffs' copyrights when he licensed and distributed: (1)

*The American In Me*, (2) a remastered version of *The Pink Album*, (3) *I Believe In Me*, (4) the

cover album *Tribute to the Avengers*, and (5) *We Are The One* respectively.  (Compl. ¶¶ 65-95.)

In claims six and seven, Plaintiffs seek a declaration that they own all rights to the copyrights that are the subject matter of claims one through five. Plaintiffs dispute Ferguson's right, under the Ingraham/Houston Co-Publishing Agreements, to license or distribute the copyrighted works. Plaintiffs claim that disputes exist about the the scope of the agreements and whether the agreements are valid. However, a in order to resolve an infringement claim, a court must decide the scope and validity of an agreement that transfers or licenses the copyrights that a plaintiff claims a defendant infringed. *See Topolos v. Caldewey*, 698 F.2d 991, 994 (9th Cir. 1983). Thus, Plaintiffs' claims six and seven are duplicative. Therefore, this Court GRANTS Ferguson's motion to dismiss claims six and seven.

In contrast, in claim eight, Plaintiffs request declaratory relief regarding an agreement between Houston and Ferguson that granted Ferguson the right to distribute certain recordings of the Winterland Performance. Plaintiffs do not allege that Ferguson infringed their copyrights in the Winterland Performance. Thus, this Court will not be required to decide copyright ownership in the Winterland Performance recordings without the relief requested. Therefore, this Court DENIES Ferguson's motion to dismiss claim eight as duplicative.

### b.      Claim eight also is not preempted by the Copyright Act.

Ferguson also argues that Plaintiffs' request for declaratory relief is preempted by the Copyright Act. However, this argument misconstrues the nature of preemption under the Copyright Act. The Copyright Act does not occupy the field of all claims that potentially involve or touch upon copyrights. *See Foad Consulting Group v. Azzalino*, 270 F.3d 821, 827 (9th Cir. 2001). "Thus, where the Copyright Act does not address an issue, we turn to state law to resolve the matter, so long as state law does not otherwise conflict with the Copyright Act." *Id.* A district court will interpret state contract law when determining copyright ownership and transferred rights in copyright infringement cases. *Topolos*, 698 F.2d at 994.

In claim eight, Plaintiffs request this Court to declare the parties' rights, under the Winterland Agreement, to copyrighted works. (Compl. ¶¶ 96-114.) Plaintiffs allege that some of these works were transferred by agreement to Ferguson; however, the parties dispute which works were transferred. The Copyright Act does not prevent a district court from declaring

United States District Court

For the Northern District of California

6

United States District Court

For the Northern District of California

1    whether a contract was formed or revoked, or declaring its contents.  *See Topolos*, 698 F.2d at

2    994.  Thus, because claim eight requests a declaration of Plaintiffs' rights under an agreement

3    governed by contract law, the claim is not preempted by the Copyright Act.  Therefore, this

4    Court DENIES, IN PART, Ferguson's motion to dismiss on this basis.

5              **2.      Plaintiffs Fail to State a Claim for Fraud (Claim Fifteen).**

6              Plaintiffs allege that they were defrauded by Ferguson when he intentionally and

7    knowingly misrepresented to third parties that he owned the copyrights to Plaintiffs' music and

8    profited from distributing that music.  The elements for a cause of action for fraud are: (1) a

9    misrepresentation to the plaintiff by the defendant, (2) knowledge of the falsity by the

10   defendant, (3) intent to induce reliance by the plaintiff on the misrepresentation, (4) justifiable

11   reliance by the plaintiff, and (5) damages.  *Lovejoy v. AT&T Corp.*, 92 Cal. App. 4th 85, 93

12   (2001) (citing *Lazar v. Superior Court*, 909 P.2d 981 (Cal. 1996)).  Ferguson argues that

13   Plaintiffs do not adequately allege facts to support a claim for fraud because they do not allege

14   he made misrepresentations to them.  Therefore, Ferguson argues, they did not rely on the

15   alleged misrepresentations to their detriment.

16             Actual reliance is an essential part of any fraud claim.  A plaintiff actually relies on a

17   defendant's misrepresentation where the plaintiff would not have acted but for the

18   misrepresentation.  *Id.* at 94.  In *Lovejoy*, AT&T allegedly misrepresented to Lovejoy's 800-

19   number carrier that Lovejoy wanted his number transferred to AT&T's service.  Lovejoy did

20   not allege that he received this communication.  The court found that Lovejoy did not state

21   claim for fraud based on a direct communication theory, because AT&T did not communicate

22   with either the plaintiff or the plaintiff's agent regarding the 800-number.  Thus, Lovejoy could

23   not have relied on the statement when acting.  Here, as in *Lovejoy*, the Plaintiffs do not allege

24   facts indicating that they relied on Ferguson's alleged misrepresentations.  In fact, other than the

25   bald assertion that Plaintiffs relied on Ferguson's misrepresentations, the complaint contains no

26   facts indicating that Ferguson misrepresented anything to the Plaintiffs, or their agents.  As

27   such, Plaintiffs fail to state a claim for fraud.  *See Twombly*, 550 U.S. at 555.

28

United States District Court

For the Northern District of California

1   Plaintiffs argue that even if Ferguson did not directly misrepresent facts, he actively

2   concealed facts in order to mislead them.  (Pl. Opp. at 8-9.)

> The elements of an action for fraud and deceit based on concealment are: (1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage.

8   *Lovejoy*, 92 Cal. App. 4th at 96.

9   Fraud under an active concealment theory requires just that — active concealment, or

10  "willful suppression of material fact."  *Id.*  For example, in *Lovejoy*, the court applied an active

11  concealment theory where the defendant had a duty to disclose the fact that it transferred

12  Lovejoy's 800-number but instead hid the transfer and related charges deep in Lovejoy's long

13  distance bill.  Thus, AT&T committed fraud by concealing from Lovejoy the fact that the

14  switch occurred, not by making misrepresentations to Lovejoy's former 800-number carrier.  *Id.*

15  In this case, Plaintiffs have neither alleged facts demonstrating that Ferguson had a duty to

16  disclose nor any facts demonstrating that Ferguson affirmatively concealed the copyright

17  transactions.  On the contrary, Plaintiffs only allege that Ferguson misrepresented his ownership

18  interest in their copyrights to third parties.

19  Thus, Plaintiffs do not allege facts stating a claim for direct fraud or for active

20  concealment.  They have not alleged that they relied on Ferguson's misrepresentations, and they

21  have not alleged facts showing that Ferguson concealed anything from them or had a duty to

22  disclose anything to them.  Therefore, the Court GRANTS Ferguson's motion to dismiss Claim

23  15.  However, because the Court cannot say it would be futile to grant leave to amend, the Court

24  GRANTS Plaintiffs leave to amend this claim.

25   **3.    Plaintiffs Fail to State a Claim for Conversion (Claim Seventeen).**

26  Plaintiffs allege that Ferguson has converted the profits he received from unlawfully

27  exploiting their copyrights by not turning the profits over to Plaintiffs. "The elements of a

28  conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the

defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." *Burlesci v. Petersen*, 68 Cal. App. 4th 1062, 1066 (1998). When a plaintiff alleges the defendant converted money, the plaintiff must specifically identify the sum of money converted, and allege that he had a right to possess it when the defendant converted it. *See Haigler v. Donnelly*, 117 P.2d 331, 335 (Cal. 1941); *Baxter v. King*, 253 P. 172, 172 (Cal. 1927). General claims for damages do not sufficiently allege conversion of a specifically identifiable sum of money. *See Farmers Insur. Exchange v. Zerin*, 53 Cal. App. 4th 445, 452 (1997) (hereinafter "*Farmers Insurance*"); *see also Baxter*, 253 P. at 172.

Plaintiffs allege that Ferguson wrongfully received money when he infringed their copyrights, that that money was rightfully theirs, and that he converted it by not turning it over to Plaintiffs when they demanded it in 2009. Ferguson argues that Plaintiffs have not sufficiently identified a sum of money and, therefore, have not adequately alleged facts to state a claim for conversion. (Def. Mot. to Dismiss at 9; Def. Reply at 7.) The Court agrees that Plaintiffs have not alleged a cause of action for conversion, because they fail to allege that Ferguson converted an identifiable sum of money.

Rather, Plaintiffs allege that Ferguson converted the profits he received from unlawfully exploiting their copyrights. This is a general claim for damages for copyright infringement. *See* 17 U.S.C. § 504(a). Although Plaintiffs allege that Ferguson converted individual payments that third parties made to Ferguson, and although Plaintiffs estimate the amount of one such payment, these allegations do no more than couch Plaintiffs' estimated damages for copyright infringement in the guise of a specific sum. If identifying an estimated amount of alleged damages was sufficient, then every disputed claim involving money, including a breach of contract, could be recast as a claim for conversion. That is not the law. *See, e.g.*, *Farmers Insurance*, 53 Cal. App. 4th at 452. To be sufficiently identifiable, a sum must be more than just damages from a disputed cause of action. *See id.*; *Baxter*, 253 P. at 172. Thus, Plaintiffs have not sufficiently identified a sum of money capable of being converted. Therefore, the Court GRANTS Ferguson's motion to dismiss Claim 17. However, because the Court cannot

United States District Court

For the Northern District of California

1    say it would be futile to grant leave to amend, this Court also GRANTS Plaintiffs leave to

2    amend this claim.[3]

3                                    **CONCLUSION.**

4          The Court GRANTS, IN PART, and DENIES, IN PART, the defendant's motion to

5    dismiss for the foregoing reasons, and GRANTS Plaintiffs leave to file an amended complaint.

6    Plaintiffs shall file an amended complaint no later than November 19, 2010.

7          **IT IS SO ORDERED.**

8

9    Dated: October 29, 2010                                    _____
                                                                 JEFFREY S. WHITE
10                                                               UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27          [3] Plaintiffs should note that a claim for conversion may be preempted by the
     Copyright Act.  *See Zito v. Steeplechase Films, Inc.*, 267 F. Supp. 2d 1022, 1027 (N.D. Cal.
28   2003).  Thus, Plaintiffs should be mindful of their obligations under Federal Rule of Civil
     Procedure 11.

**United States District Court**
For the Northern District of California